Albert A. ROBIN, et al., Plaintiffs,

v.

DOCTORS OFFICENTERS CORPORATION, et al., Defendants.

Nos. 84 C 10798, 85 C 8913 and 87 C 6222.

United States District Court, N.D. Illinois, E.D.

May 4, 1988.

James S. Gordon and Edward Slovick, Chicago, Ill., for plaintiffs.

Joan M. Hall, Jenner & Block, Kevin Flynn, Coffield, Ungaretti, Harris & Slavin, Cheryl Weissman, Rosanne J. Faraci, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Defendants, Flashner Medical Partnership ("FMP"), Bruce A. Flashner, Ronald L. van der Horst, Lawrence B. Levy, Sherry Dolce, David M. Turner, David R. Shevitz and Katten, Muchin & Zavis (collectively, "defendants"), jointly move to decertify the plaintiff class and for leave to serve third-party complaints upon Steiner Diamond & Co., Inc. ("Steiner Diamond"), in case Nos. 84 C 10798 and 85 C 8913 of this consolidated action. Defendant Arthur Young & Company ("Arthur Young") moves to dismiss the complaint in case No. 87 C 6222.

### Background

This consolidated securities litigation arises from a public offering of the common stock of defendant Doctors Officenters Corporation ("DOC") in December, 1983. Plaintiffs are purchasers of DOC stock who allegedly purchased their shares in reliance on a prospectus issued by DOC on December 7, 1983. They contend that the prospectus contained material omissions and misleading statements, thereby constituting federal securities[1] and common law fraud violations.

In the first complaint (No. 84 C 10798) plaintiffs named as defendants DOC, FMP (a medical partnership that owned DOC stock) and six individuals who served as directors and officers of DOC. Plaintiffs filed a second action (No. 85 C 8913) against the law firm of Katten, Muchin & Zavis, DOC's counsel in connection with the public offering, as well as six individual directors and officers. Plaintiffs filed the third case (No. 87 C 6222) against Arthur Young & Company, the accounting firm that audited the financial statements included in the December 7, 1983 prospectus. Steiner Diamond, the managing underwriter for the public offering, was not named as a defendant in any of the three cases.

### Discussion

When presented with a motion addressing class certification and a motion directed to the merits, the court generally resolves the class issue first. *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353 (7th Cir. 1975). This approach preserves the purely procedural nature of a class action determination and ensures that class representatives are not prematurely excluded because their claim does not state a cause of action. *McCray v. Standard Oil Co. (Indiana)*, 76 F.R.D. 490, 495 (N.D.Ill.1977). In this case, however, defendants' motion to decertify is predicated upon the fact that they seek to name Steiner Diamond as a third-party defendant. Accordingly, defendants' motion for leave to serve third-party complaints upon Steiner Diamond shall be considered first, followed by defendants' motion to decertify. Arthur Young's motion to dismiss will be addressed last.

### I. Defendants' Joint Motion for Leave to Serve Third–Party Complaints

Defendants move for leave to serve third-party complaints for contribution

---

1. The complaints allege violations of Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"), 15 U.S.C. § 78j(b), and SEC Rule 10b–5 ("Rule 10b–5"), 17 C.F.R. § 240.10b–5.

upon Steiner Diamond. They claim that Steiner Diamond, as managing underwriter, participated in the preparation of the prospectus and knew the truth of the matters allegedly misrepresented or omitted in the prospectus. They maintain that, to the extent they are found liable to plaintiffs, Steiner Diamond is liable to them for contribution. Plaintiffs oppose defendants' motion on the grounds that the third-party complaints are defective on their face and that they would delay and disadvantage the existing action. For the following reasons, defendants' motion is granted.

■ Rule 14(a) of the Federal Rules of Civil Procedure permits a defendant to implead a third party who is or may be liable to the defendant for all or part of the plaintiffs' claim. Defendants have an implied right of contribution under Section 10(b) and Rule 10b–5 to recover from joint tortfeasors. *Heizer Corp. v. Ross,* 601 F.2d 330, 331–34 (7th Cir.1979) (contribution may be asserted in connection with a Rule 10b–5 claim in a separate suit, as well as by counterclaim or third-party claim)[2]. Accordingly, one party is not required to bear the entire burden of a loss for which two parties are responsible, merely because of a plaintiff's whim or his collusion with the other wrongdoer. *See Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.,* 594 F.2d 1179, 1186 (8th Cir. 1979). To state a claim for contribution, a third-party plaintiff must allege that the third-party defendant was a joint participant in the wrongdoing alleged in the main action. *Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1185 (S.D.N.Y.1979).

Here, Count I of the defendants' third-party complaints allege Section 10(b) and Rule 10b–5 violations by Steiner Diamond against the plaintiffs. Specifically, Count I of each of the third-party complaints alleges that Steiner Diamond knew all the material facts relevant to the December 7, 1983 prospectus and actively participated with defendants or rendered assistance to defendants in connection with the public offering. *See* Third–Party Complaint of Katten Muchin at ¶¶ 8, 10; Third–Party Complaint of FMP, et al. at ¶¶ 13, 15. Count II of each third-party complaint alleges that Steiner Diamond aided and abetted defendants in the preparation of the prospectus. Therefore, defendants have stated claims against Steiner Diamond for secondary liability under Section 10(b) and Rule 10b–5.

■ Further, to allow joinder of Steiner Diamond as a third-party defendant at this stage of the litigation neither prejudices plaintiffs nor disadvantages these proceedings. The third-party complaints merely raise the issue of whether Steiner Diamond is jointly liable to the plaintiffs for the violations alleged in the original complaint. It is unlikely that the addition of Steiner Diamond as a party will excessively prolong discovery; the company has already produced documents and one of its two principals has been deposed. Joining Steiner Diamond at this time actually promotes judicial efficiency by eliminating the need for the separate adjudication of defendants' contribution claim. Accordingly, defendants' joint motion to serve third-party complaints is granted.

## II. Defendants' Motion to Decertify the Class

Defendants jointly move to decertify the class on the grounds that (1) the class representatives' relationships with Steiner Diamond present a conflict of interest, and (2) plaintiffs' counsel cannot adequately represent the interests of absent class members. Plaintiffs deny that their relationship, or that of their counsel, with the principals of Steiner Diamond create a conflict of interest that warrants decertifica-

---

**2.** Here, defendants attempt to assert a claim for contribution in a third-party complaint; in *Heizer,* the plaintiff asserted a claim for contribution against a third party in a separate action, after a judgment for equitable relief had been entered against him in a previous action. There, the Seventh Circuit ruled that the complaint did not state a claim for contribution because Heizer did not allege that he had made any payment to plaintiffs in connection with the earlier judgment. Here, because defendants assert a contribution claim by way of third-party complaints that will be resolved along with the underlying claims, they need not allege payment of any sum to plaintiffs.

tion. For the reasons that follow, defendants' motion to decertify the class is denied.

■ The court retains the authority to amend or redefine the class if events in the course of litigation require it. *Phan v. Friedes,* 91 F.R.D. 408, 412 (N.D.Ill.1981). The decision to amend a class certification order is discretionary. *In re International House of Pancakes Franchise Litigation,* 536 F.2d 261, 263 (8th Cir.1976). Because judgment in a class action conclusively determines the rights of absent class members, the adequacy of class representation must be carefully scrutinized. *Hansberry v. Lee,* 311 U.S. 32, 41–43, 61 S.Ct. 115, 117–19, 85 L.Ed. 22 (1940). This consideration involves two inquiries: (1) whether there is any probability that the suit is collusive or that the named parties have interests antagonistic to all or part of the class, and (2) whether the representative parties' attorney is qualified and generally able to conduct the proposed litigation. *See Amos v. Board of School Directors of the City of Milwaukee,* 408 F.Supp. 765, 773 (E.D.Wisc.1976). Decertification should only occur where it is clear that changed circumstances make continuation of the class action improper. *Sley v. Jamaica Water and Utilities, Inc.,* 77 F.R. D. 391, 394 (E.D.Pa.1977).

(1) Adequacy of the Class Representatives

■ Defendants contend that plaintiffs' business and social relationships with Steiner Diamond and its principals render them incapable of objectively evaluating class claims against Steiner Diamond. They argue that if Steiner Diamond is joined as a third-party defendant, plaintiffs will not be able to prosecute their claims without exposing the principals of Steiner Diamond to judgment. Because no one can gauge the impact of the conflict on the effectiveness of the class representatives, defendants suggest that plaintiffs should not be permitted to prosecute their claims as a class action.

Plaintiffs argue that Steiner Diamond has been potentially liable to the defendants for contribution since the inception of this action. They reason that they would not have filed this action against any of the defendants if they had been concerned about Steiner Diamond's potential exposure. As evidence of their vigorous prosecution of the claims, the named plaintiffs assert that they have sustained $300,000 in damages and have expended over $15,000 to date in this litigation, in addition to their personal time and attention. They maintain that disclosure of the fact that Steiner Diamond was not named as an original defendant in the class notice is the appropriate remedy rather than decertification of the class.

The court's primary concern in determining the adequacy of representation is whether the class representative has a common interest with the class and has vigorously prosecuted its interests. *Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973). A representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the interests of those he represents. *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 323 (7th Cir.1985). Representation is inadequate where the class representative fails to name as a defendant a party with whom he has a continuing business relationship, despite the fact that the party is liable to the class. *Adise v. Mather,* 56 F.R.D. 492, 495–96 (D.Colo.1972). Where the conflict is merely a potential one, however, the class may be maintained by adding at least one representative who has neither a business nor a social relationship with the putative defendant. *See Swanson v. Wabash, Inc.,* 577 F.Supp. 1308, 1325–26 (N.D.Ill.1983). The burden is on the party opposing class certification to demonstrate that representation will be inadequate. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

The history of this litigation supports plaintiffs' contention that they have vigorously prosecuted the class' common claims against the defendants. It appears, however, that members of the class may have an interest in suing Steiner Diamond as

well as those defendants already named in this action. Nevertheless, the alleged conflict does not dictate decertification of the class.

In granting plaintiffs' motion to certify the class, the court considered the identical arguments in opposition and determined that neither the personal nor professional relationships between Steiner Diamond and the named plaintiffs created a conflict of interest. Specifically, the court noted that numerous absent class members also used Steiner Diamond's brokerage services. Memorandum Opinion dated January 28, 1987 at 6. The court also rejected the argument that the representatives' personal relationships with Steiner Diamond's principals, Robert Steiner or Terry Diamond, render the representation inadequate. It determined that the identity of the claims of the representatives and absent class members was not defeated by the fact that certain absent members may elect to pursue a claim against Steiner Diamond. *Id.* In their present motion, defendants do not offer additional facts to establish any conflict of interest; they argue that the actual joinder of Steiner Diamond as a third-party defendant warrants re-examination of the adequacy of representation.

■ At this stage of the litigation, the court is not persuaded that the joinder of Steiner Diamond creates a conflict that renders representation of the class inadequate. Any potential conflict may be prevented by means other than decertification of the class. First, as this court previously ordered, the notice to the class shall disclose that Steiner Diamond, the managing underwriter for the offering at issue, is not a defendant for purposes of recovery by the class. Second, the order of class certification shall be amended to require the addition of at least one representative, together with his or her legal counsel, who is not a social or business acquaintance of Steiner Diamond or its principals. The attorney then may decide whether the class should name Steiner Diamond as a defendant in the main action. This approach ensures that the interests of all absent class members will be fairly and adequately represented. *See Swanson, supra,* 577 F.Supp. at 1325–26.

(2) Conflict of the Class Counsel

Defendants further contend that the class should be decertified because, prior to commencement of this action, class counsel James Gordon rendered legal advice to Steiner Diamond concerning matters at issue in this litigation. They argue that the addition of Steiner Diamond as a third-party defendant and alleged joint participant in the fraudulent conduct at issue bars Gordon's continued representation of the class. Defendants maintain that this conflict also bars Gordon's co-counsel from serving as class counsel.

Neither plaintiffs nor Steiner Diamond—the parties directly in interest—acknowledge any conflict of interest or seek to disqualify Gordon. Plaintiffs argue that Gordon rendered assistance to Diamond, individually, not to Steiner Diamond. The consultation allegedly concerned the 1984 sale of DOC's assets to Humana, and not the allegedly fraudulent prospectus issued one year earlier. Plaintiffs maintain that their retention of Gordon and his prosecution of this action to date demonstrates that no conflict exists.

■ Defendants predicate their argument that Gordon cannot serve as class counsel upon his alleged conflicts, rather than his lack of experience or expertise in securities fraud litigation. Accordingly, this portion of defendants' motion will be treated as a motion for disqualification. The Seventh Circuit has outlined a three-step analysis in its decisions concerning attorney disqualification. The court must consider (1) whether a substantial relationship exists between the subject matter of the prior and present representation; (2) if so, whether the presumption of shared confidences in the prior representation has been rebutted; and (3) alternatively, whether the presumption of shared confidences has been rebutted with respect to the

present representation.[3] *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983). The moving party must delineate specific subject matter, issues and causes of action in the former representation that are common to the present one to enable the court to determine whether the substantial relationship test has been met. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir.1981). Merely pointing to a superficial resemblance between present and prior representation will not substitute for the careful comparison that is required. *Id.*

The court has broad discretion in determining whether disqualification of counsel is necessary. *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 715 (7th Cir. 1977). In making its determination, it considers whether the plaintiff would be unduly prejudiced if compelled to retain new counsel at this state of the proceedings. *Id.* at 716. Disqualification is a drastic measure that the court will not impose except when absolutely necessary. *Schiessle, supra*, 717 F.2d at 420.

At the time the class was certified, this court found that Gordon's previous consultations were with Terry Diamond, in his individual capacity as a director of DOC, and not with the firm of Steiner Diamond. Memorandum Opinion dated January 28, 1987 at 3–4. The court noted that both Gordon and Diamond testified that their discussion was limited to the proposed sale of DOC's assets to Humana in 1984. *Id.* at 4. This information bore "little relevance" to the present action, which concerns statements in the DOC prospectus issued in connection with the 1983 public offering. *Id.* This court concluded that it was not clear that Gordon's representation of Diamond was substantially related to his representation of plaintiffs here. *Id.* Further, it determined that Gordon's association with class co-counsel, James Slovick and Russell Woody, was not sufficient to impute Gordon's alleged conflict of interest to them. *Id.*

Defendants moved for reconsideration of the January 28, 1987 order. The court re-examined all of the evidence submitted by defendants in support of their arguments and denied the motion. *See* Memorandum Opinion dated February 25, 1987. However, the court noted that the adequacy of representation might need re-examining if Steiner Diamond or its principals actually were named as defendants or third-party defendants. *Id.* at 6.

Defendants attempt to use this motion to assert the identical arguments that this court twice has rejected. Here, as in their previous submissions, defendants fail to delineate specific subjects, issues or information discussed during Gordon's consultation with Diamond that relate to his representation of plaintiffs in this action. Defendants have not identified any points of intersection between Gordon's former "representation" of Diamond and current representation of the class in this action. Instead, they characterize Gordon's failure to join Steiner Diamond as a "glaring omission" that should compel this court to conclude that a conflict exists. Defendant's Reply Memorandum at 6. The testimony of Gordon and Diamond in fact rebuts the presumption that relevant confidences were shared and suggests that the discussions were restricted to the distribution of the liquidation proceeds to shareholders one year after the sale. *See* Diamond dep. at 17–18; Gordon aff. ¶ 3. Given this court's previous determinations that defendants had not established a relationship between the two representations, and defendants' failure to produce any additional facts in support of their argument, the court cannot conclude that a substantial relationship warrants the disqualification of Gordon as class counsel.

The addition of another class representative, together with his or her own counsel, circumvents any potential conflict. The addition of an impartial attorney ensures that vigorous prosecution of the class claims

---

3. The "substantial relationship" analysis is appropriate for measuring violations of both Canon 4 and Canon 9 of the ABA Code of Professional Responsibility. *See Original Appalachian*

*Artworks v. May Dept. Stores*, 640 F.Supp. 751, 756; *see generally Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982).

will continue, notwithstanding Steiner Diamond's addition as a third-party defendant. Further, this course of action protects the class, which certainly would be prejudiced if compelled to retain new counsel, unfamiliar with the pending litigation, four years after the inception of this lawsuit.

### III. Arthur Young's Motion to Dismiss

Arthur Young moves to dismiss the complaint in case No. 87 C 6222 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Arthur Young argues that Count I fails to state a cause of action against Arthur Young for aiding and abetting violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5. Additionally, it contends that the claim is barred under both federal and state statutes of limitations and that the applicable statute was not tolled. Arthur Young asserts that Count II, a claim of common law fraud, should be dismissed for lack of jurisdiction. For the following reasons, Arthur Young's motion to dismiss is granted.

In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded, factual allegations as true and views them in the light most favorable to the plaintiffs. *Gomez v. Illinois State Bd. of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). However, it is not bound by the legal characterizations that plaintiff attributes to the facts. *Republic Steel Corp. v. Pennsylvania Engineering Corp.,* 785 F.2d 174, 183–84 (7th Cir.1986). For purposes of the motion, the record is limited to the language of the complaint and to matters of judicial notice. The complaint cannot be amended by plaintiffs' brief filed in opposition to the motion. *Id.; Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). The complaint should be dismissed where it is clear that

no relief could be granted under any set of facts consistent with the allegations in the complaint. *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### A. Count I: Securities Fraud
#### (1) Statute of Limitations

Arthur Young argues that the claim asserted in Count I is time barred. It concedes that the Seventh Circuit traditionally applies the three-year Illinois limitations statute[4] in such cases, yet devotes a substantial portion of its brief to the argument that the more restrictive federal limitations period[5] should control. Arthur Young maintains that plaintiffs' claim is time-barred under either statute, and that plaintiffs have not alleged sufficient facts to toll the applicable limitations statute.

Plaintiffs argue that the three-year Illinois limitations period governs their claim. They maintain that the complaint sets forth sufficient facts to show that the statute was tolled until plaintiffs were put on notice in December, 1984. Having filed the complaint within three years thereafter, plaintiffs deny that the claim is barred.

As to the applicable statute of limitations, the Seventh Circuit has consistently held that the Illinois three-year statute of limitations for state securities claims applies to federal securities violations arising in Illinois. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 455 (7th Cir.1987); *Parrent v. Midwest Rug Mills,* 455 F.2d 123 (7th Cir.1972). Despite growing support for the adoption of a uniform federal limitations period, courts have continued to apply the relevant state statute of limitations. *Cf. Davis v. Birr, Wilson & Co., Inc.,* 839 F.2d 1369 (9th Cir.1988) (per curiam); *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988). The selection of a uniform federal statute of limitations is a leg-

---

**4.** Chapter 121½, ¶ 137.13(D) of the Illinois Revised Statutes provides that no action shall be brought for relief after three years from the date of sale. Ill.Rev.Stat. ch. 121½, ¶ 137.13(D).

**5.** Under the statutes of limitations in the Securities Act of 1933 and the Securities Exchange Act

of 1934, an express liability claim must be brought within one year after discovery of the facts constituting the violation and within three years of the violation. 15 U.S.C. § 77m; 15 U.S.C. § 78r(c).

islative task, or one more appropriately considered by federal courts superior to this one. Therefore, the court finds that the three-year limitations period of the Illinois securities statute governs the present claims.

■ Applying the Illinois limitations period to the facts of this case, plaintiffs' claims against Arthur Young were time-barred three years after the date of sale, or after December 6, 1986. Further inquiry is necessary to determine whether plaintiffs have pled sufficient facts to invoke the equitable tolling doctrine.

Statutes of limitations are tolled in federal securities actions in two situations. First, the tolling rule applies where the fraud remains undiscovered even though the defendant did not actively conceal it and the plaintiff exercised due diligence; plaintiff has the burden of showing that he exercised reasonable care and diligence in inquiring into the facts that would disclose fraud. Second, the statute is tolled where defendant takes affirmative steps to conceal the fraud after its commission; the limitations period is tolled until plaintiff actually discovers the fraud. *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir.1975).

The allegations in Count I do not provide a basis for tolling the limitations statute under either factual scenario. First, if plaintiffs do not allege that Arthur Young concealed any wrongdoing, they bear the burden of showing that they were unable to discover the fraud despite the exercise of due diligence or reasonable care. Although plaintiffs maintain that they first had notice in December, 1984, they do not allege anywhere in the complaint that they were diligent in their efforts to discover the alleged fraud.

Second, plaintiffs have not adequately alleged that Arthur Young fraudulently concealed the violations subsequent to their commission. Although they state that Arthur Young aided, abetted and conspired with defendants in issuing the misleading prospectus, plaintiffs do not allege that Arthur Young took any affirmative steps to conceal the fraud after the prospectus was issued. *See* Complaint, ¶¶ 18, 20. Arthur

Young's failure to withdraw its consent to the use of its accurate report in the allegedly misleading prospectus does not constitute an affirmative step to conceal the fraud after its commission. Accordingly, the allegations in Count I are insufficient to toll the limitations statute. Plaintiffs' cause of action arose on the date of sale, or December 7, 1983; the three-year limitations period ended on December 6, 1986. Because plaintiffs did not file their complaint against Arthur Young until July 13, 1987, their claims are time-barred.

Although Count I may be dismissed for this reason alone, the court will address the second argument.

### (2) Aiding & Abetting Securities Fraud

To state a claim for aiding and abetting violations of Section 10(b) and Rule 10b–5, plaintiffs must be able to allege that (1) Arthur Young possessed the same knowledge as other defendants that certain portions of the prospectus were misleading, and (2) Arthur Young committed a manipulative or deceptive act, or knew of an omission of material fact that made the prospectus misleading and had a duty to disclose this information to the plaintiffs. *See Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 495–96 (7th Cir.1986).

■ Under the facts alleged in Count I, plaintiffs do not state a claim against Arthur Young for aiding and abetting securities fraud. Although the general allegations concerning knowledge or reckless disregard are probably sufficient, *see* Fed.R. Civ.P. 9(b), plaintiffs have not adequately alleged that Arthur Young committed a deceptive or manipulative act in furtherance of the fraud. Nowhere in the complaint do they allege that Arthur Young prepared a deceptive or misleading report. Rather, plaintiffs attempt to characterize Arthur Young's consent to the use of its report in the allegedly misleading prospectus as affirmative deceptive conduct. Arthur Young allegedly "aided, abetted and conspired with [defendants] in issuing the false and misleading prospectus ..." Complaint, ¶ 18. To the extent that plain-

**208**

tiffs attempt to allege that Arthur Young acted in furtherance of a conspiracy or agreement with defendants, their conclusory allegations are inadequate. *See Otto v. Variable Annuity Life Ins. Co.*, 611 F.Supp. 83 (N.D.Ill.1985), *reconsideration denied*, 107 F.R.D. 635, *affirmed in part, reversed in part*, 814 F.2d 1127; *see also Maloney v. Washington*, 584 F.Supp. 1263 (N.D.Ill.1984).

 The remaining allegations concerning Arthur Young's participation reflect passive conduct that is not actionable absent a duty to disclose. For example, plaintiffs allege that Arthur Young "failed to withdraw its consent" to the use of its report in the prospectus, "failed to insist on revision of the information" and "failed to modify its report to disclose the absence of interim financial statements ..." Complaint, ¶¶ 14, 16. Plaintiffs allege that Arthur Young had a professional duty to revise, modify or otherwise withhold its consent in light of developments occurring subsequent to the date of its report. Although accountants are required to take reasonable steps to correct misstatements discovered in previous financial statements, *see ITT v. Cornfeld*, 619 F.2d 909, 927 (2d Cir.1980), they have no duty to the public to disclose events that occur subsequent to the period that they purport to certify. *See Escott v. Bar Chris Construction Corp.*, 283 F.Supp. 643, 684 (S.D.N.Y.1968). The Seventh Circuit has expressly declined to impose a duty upon accounting firms to "blow the whistle" on their clients. *Barker, supra*, 797 F.2d at 497 (liability depends on an existing duty to disclose). Because plaintiffs do not properly allege that Arthur Young violated an existing duty to plaintiffs by failing to disclose misrepresentations or omissions in the prospectus, their claim in Count I must be dismissed.

*B. Count II: Common Law Fraud*

Count II sets forth a claim for common law fraud. Because Count I has been dismissed, this pendent state law claim will be dismissed for lack of jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

For the foregoing reasons, defendants' joint motions for leave to serve third-party complaints are granted. Defendants' joint motion to decertify the plaintiff class is denied. The class is ordered to select an additional representative with his or her own legal counsel within 30 days; neither the representative nor his or her counsel may be a business or social acquaintance of Steiner Diamond or its principals. Defendant Arthur Young's motion to dismiss case No. 87 C 6222 is granted.