### In re HARCOURT BRACE JOVANOVICH, INC. SECURITIES LITIGATION.

No. 90 Civ. 1318 (JMC).

United States District Court,
S.D. New York.

Oct. 28, 1993.

---

### MEMORANDUM AND ORDER

CANNELLA, District Judge:

Plaintiffs Rand and LeWinter's appeal from the Order of Magistrate Judge Katz is denied. Fed.R.Civ.P. 72(a). Plaintiffs' motion to amend the class action order to allow withdrawal of named plaintiffs Rand, LeWinter, and Levy is denied. Fed.R.Civ.P. 23(c)(1).

### BACKGROUND

Plaintiffs Rand and LeWinter appeal from an Order of Magistrate Judge Katz dated March 25, 1992, in which he granted the defendant Harcourt Brace Jovanovich's ("HBJ") request that the named plaintiffs in the instant class action suit produce (1) the complaint and transcript of any deposition the plaintiffs have given in other securities or class action suits, and (2) plaintiffs' brokerage statements showing trading in public securities during 1988 and 1989. Plaintiffs Rand, LeWinter, and Levy also seek to withdraw as class representatives. Defendants oppose both motions, asserting that the Magistrate Judge's determination of the relevancy of discovery documents must be upheld under the clearly erroneous or contrary to law standard of Rule 72; and that the withdrawal of Rand, LeWinter, and Levy when fact discovery is nearly complete will prejudice the defendants.

This securities fraud action represents the consolidation of class action complaints[1] filed against defendant HBJ and its officers and directors in the spring of 1990. Plaintiffs' claims are premised upon section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, and upon section 20 of the Securities Act of 1933. On July 25, 1990, the Court certified the class of purchasers of HBJ common stock for the period March 30, 1989 through November 28, 1989. *See* Stipulation and Order, 90 Civ. 1318 (JMC) (S.D.N.Y. July 25, 1990). The Court certified six individuals as class representatives, including plaintiffs Rand, LeWinter, and Levy. *See id.* Samuel Heins was designated as Lead Counsel for the plaintiffs. *See* Stipulation and Order, 90 Civ. 1318 (JMC), at 6 (S.D.N.Y. May 9, 1990).

On January 21, 1992, the defendants served a document request on plaintiffs' Lead Counsel, addressed to all named plaintiffs. Lead Counsel objected to the document request on behalf of all plaintiffs. No separate objections were filed by Rand and LeWinter. Plaintiffs objected to document requests numbered five and seven. Request No. 5 sought the production of documents concerning any other securities law, class action, derivative, breach of fiduciary duty, or waste of corporate assets litigation to which the named plaintiffs were or had been a party. Request No. 7 sought to obtain documents identifying publicly-traded securities beneficially owned or controlled by the named plaintiffs, and documents relating to such securities for the five-year period from December 1984 through December 1989.

On March 19, 1992, defendants moved to compel production of the aforementioned documents from all named plaintiffs. On March 25, 1992, the Magistrate Judge heard argument on defendants' motion. During the March 25, 1992, hearing, the Magistrate Judge ruled that the named plaintiffs must produce (1) the complaint, and transcript of any deposition given in other securities law, class action, breach of fiduciary duty, or waste of corporate assets litigation to which the plaintiff has been a party, and (2) brokerage statements reflecting the plaintiffs' trading in publicly-traded securities during 1988 and 1989.

On April 6, 1992, plaintiffs Rand and LeWinter, through their individual attorneys,

---

1. On May 9, 1990, the following cases were consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure: *Klein v. Berardi*, 90 Civ. 1318 (JMC); *Kahan v. Berardi*, 90 Civ. 1399 (JMC); *Levy, as Custodian for Joshua Levy and Stephanie Levy v. Harcourt Brace Jovanovich*, 90 Civ. 1496 (JMC); *Rand and LeWinter v. Berardi*, 90 Civ. 1769 (JMC); and *Rahmanan v. Berardi*, 90 Civ. 2796 (JMC). *See* Stipulation and Pretrial Order No. 1, 90 Civ. 1318 (JMC) (S.D.N.Y. May 9, 1990).

the Law Offices of Joseph H. Weiss, appealed from the Magistrate Judge's Order. Thereafter on April 22, 1992, plaintiffs moved for withdrawal of Rand and LeWinter as class representatives. On April 23, 1992, the Magistrate Judge granted the plaintiffs' application for a stay of enforcement of the Magistrate Judge's ruling concerning document requests as applied to plaintiffs Rand and LeWinter. *See* Memo Endorsed, 90 Civ. 1318 (JMC) (S.D.N.Y. Apr. 23, 1992). The Magistrate Judge also granted the plaintiffs' application for a stay of their depositions. *See* Memo Endorsed, 90 Civ. 1318 (JMC) (S.D.N.Y. May 7, 1992). On May 13, 1992, plaintiffs requested that a third named plaintiff, Frank Levy, be joined in the motion for withdrawal. *See* Letter to the Court from Samuel D. Heins, dated May 13, 1992. Defendants also oppose Levy's withdrawal as a named plaintiff. *See* Letter to the Court from John Sullivan, dated May 20, 1992. The Magistrate Judge granted the plaintiffs' request for a stay of Levy's deposition. *See* Memo Endorsed, 90 Civ. 1318 (JMC) (S.D.N.Y. May 20, 1992). The plaintiffs have stated that if the motion to withdraw is granted by the Court, then the plaintiffs will withdraw the pending Rule 72 motion. *See* Letter to the Court from Samuel D. Heins, dated April 22, 1992.

## DISCUSSION

### I. *Appeal from the Magistrate Judge's Order*

The Court's review of the Magistrate Judge's Order is governed by the clearly erroneous or contrary to law standard for non-dispositive pretrial matters contained in Rule 72(a). Rule 72(a) provides:

> The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law.

Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A) (1992).

**2.** In count one of the amended consolidated complaint the plaintiffs allege:
　　Plaintiffs and members of the class made such purchases of HBJ common stock in reliance

Since it is the Magistrate Judge's determination of the relevancy of defendants' document requests that is in dispute, the contrary to law standard for legal questions is applicable. In the resolution of discovery disputes, "the Magistrate is afforded broad discretion, which will be overruled only if abused." *Citicorp v. Interbank Card Ass'n,* 478 F.Supp. 756, 765 (S.D.N.Y.1979); *see also Dubin v. E.F. Hutton Group, Inc.,* 125 F.R.D. 372, 373 (S.D.N.Y.1989).

Plaintiffs argue that the use of the fraud on the market theory of reliance forecloses discovery concerning their investment histories and prior involvement in other securities and class action suits. Defendants counter that plaintiffs' consolidated amended complaint alleges traditional direct reliance on the defendants' misrepresentations and omissions, as well as fraud on the market theory [2]; and moreover, since the fraud on the market theory creates a rebuttable presumption of reliance the defendants ought to be allowed discovery which would assist in rebutting such presumption.

In *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), the United States Supreme Court approved the use of the fraud on the market theory to create a rebuttable presumption of an investor's reliance on materially misleading statements. *See id.* at 250, 108 S.Ct. at 993. The fraud on the market theory presupposes that an investor relies on the integrity of the price of the stock set by the market. *See id.* at 241–42, 108 S.Ct. at 988–89. As the Supreme Court explained:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs'

on, directly or indirectly, the untrue statements and material omissions of Defendants and the integrity of the market for HBJ common stock. Amended Consolidated Complaint, at ¶ 45.

purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Id.* (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3rd Cir.1986)).

The Court did not dispense with reliance as an element of the Rule 10b–5 cause of action; rather, it relied on such precedents as *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), in which the causal connection in an omissions case was furnished by a breach of a duty to disclose material information, and *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 384–85, 90 S.Ct. 616, 621–22, 24 L.Ed.2d 593 (1970), in which the proxy solicitation itself, as opposed to defective solicitation materials, provided the "essential link in the transaction." *Basic,* 485 U.S. at 243, 108 S.Ct. at 989. The Supreme Court reasoned that "[i]n an open and developed market, the dissemination of material misrepresentations or withholding of material information typically affects the price of the stock, and purchasers generally rely on the price of the stock as a reflection of its value." *Id.* at 244, 108 S.Ct. at 990 (quoting *Peil,* 806 F.2d at 1161). The Court noted that "[r]ecent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information, and hence, any material misrepresentations." *Id.* 485 U.S. at 246, 108 S.Ct. at 991.

■ In order to rebut the presumption of reliance that is established by the fraud on the market theory, a defendant must demonstrate that the price received or paid by the investor was not causally linked to the alleged misrepresentation. *See id.* at 248, 108 S.Ct. at 992. The Court in *Basic* observed that the defendants could rebut the presumption of reliance by a showing that the market makers were "privy to the truth ... and thus that the market price would not have been affected by [the] misrepresentations." *Id.* Defendants could also rebut the presumption by showing that news had credibly entered the market and had countermanded the effect of the misstatements; or that plaintiffs "would have divested themselves of their [ ] shares without relying on the integrity of the market." *Id.* at 249, 108 S.Ct. at 992.

■ Plaintiffs have not shown that the March 25, 1992 decision of the Magistrate Judge is contrary to law. A named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3).[3] *See, e.g., Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978) (typicality destroyed by named plaintiff's reliance on another's expertise).[4] In some instances, such atypicality has resulted in denial of class certification.[5] *See, e.g., Landry v. Price Waterhouse Chartered Accountants,* 123 F.R.D. 474, 476–77 (S.D.N.Y.1989) (proposed class representatives purchased based on non-public informa-

---

**3.** In order to certify a class action suit, a court must find that the requirements of Rule 23(a) have been met, and that one of the three alternate requirements set forth in Rule 23(b) has been met. Under Rule 23(a), the district court must find that (1) the class is so numerous that joinder is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the class representatives are typical of the claims or defenses of the putative class, and (4) the class representatives will fairly and adequately protect the interests of the class. *See Hemming v. Alfin Fragrances, Inc.,* 86 Civ. 2563 (JFK), 1990 WL 106997, at *2 (S.D.N.Y. July 25, 1990). In a case under Rule 23(b)(3) the district court must find that common questions of law and fact predominate over any individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Hemming,* 1990 WL 106997, at *6.

**4.** Reliance on the advice of third parties does not, in and of itself, constitute non-reliance, so long as the third party, in turn, relied on the integrity of the market. *See, e.g., Prostic v. Xerox Corp.,* Civ. B–90–113 (EBB), 1991 WL 206770, at *3 (D.Conn. July 19, 1991); *Kuczynski v. Ragen Corp.,* 86 Civ. 7194 (SWK), 1989 WL 34055, at *3 (S.D.N.Y. Apr. 6, 1989).

**5.** Other courts have held the plaintiff atypical and inadequate as a class representative due to the unique non-reliance defense, but have nonetheless certified the class as the predominance requirement of Rule 23(b)(3) has been satisfied. *See, e.g., McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 339 (N.D.Ill.1982) (plaintiff also relied on oral misrepresentations).

tion and recommendations, not on integrity of market). A named plaintiff's sophistication in a fraud on the market suit has been held relevant to the issue of non-reliance. *See, e.g., Zandman v. Joseph,* 102 F.R.D. 924, 931–32 (N.D.Ind.1984) (class representative atypical as he was subject to unique defense that he was sophisticated investor); *Weintraub v. Texasgulf, Inc.,* 564 F.Supp. 1466, 1471 (S.D.N.Y.1983) (class certification denied where proposed class representative was sophisticated speculative trader whose peculiar trading activities would give rise to unique defenses); *Cohen v. Laiti,* 98 F.R.D. 581, 583–84 (E.D.N.Y.1983) (class certification denied due to proposed class representative's investment strategy and reliance on inside information); *Kline v. Wolf,* 88 F.R.D. 696, 700 (S.D.N.Y.1981) (class certification denied where proposed class representative was a speculative trader who did not rely on market), *aff'd,* 702 F.2d 400 (2d Cir.1983). *But see Hoexter v. Simmons,* 140 F.R.D. 416, 420 (D.Ariz.1991) (presumption of reliance applies regardless of investment experience or proficiency). It is axiomatic under *Basic* that non-reliance on the integrity of the market is critical in rebutting the presumption of reliance in a fraud on the market case. Thus, discovery of a named plaintiff's investment history has been permitted. *See Antonson v. Robertson,* 88 Civ. 2567–V, 1990 WL 58028, at *3 (D.Kan. Apr. 11, 1990) (plaintiffs' motion for protective order denied).

The Magistrate Judge's Order permitting discovery of plaintiffs Rand and LeWinter's investment history is in accord with the above cited principles of law which indicate that the investment history of a named plaintiff is relevant to a defense of non-reliance on the integrity of the market, and therefore discoverable.

■ Plaintiffs' complaint alleges direct as well as indirect reliance on the alleged misrepresentations and omissions. Investor sophistication is also relevant to the issue of reliance in a traditional Rule 10b–5 claim. *See Zobrist v. Coal–X, Inc.,* 708 F.2d 1511,

1516–18 (10th Cir.1983); *Quintel Corp., N.V. v. Citibank, N.A.,* 596 F.Supp. 797, 801–02 (S.D.N.Y.1984); *see also* C. Edward Fletcher, III, *Sophisticated Investors Under the Federal Securities Laws,* 1988 Duke L.J. 1081, 1085–90 (1988). Thus, discovery relating to investment history is proper where direct reliance is alleged. *See Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 460 (S.D.N.Y.1988).

■ Similarly, a named plaintiff's involvement in other securities and class action litigation is also relevant to the issue of reliance. In *Hoexter v. Simmons,* 140 F.R.D. 416 (D.Ariz.1991), the defendants argued that two of the plaintiffs had served as named plaintiffs in numerous other securities actions, and were consequently subject to unique defenses that were atypical of the class. *See id.* at 422. The district court held that "[t]he prior litigation in which [plaintiffs] have served as named plaintiffs is so extensive ... that they will inevitably be subject to unique defenses concerning their reliance on the market's integrity in purchasing stock." *Id.* at 422–23. Thus, the Magistrate Judge's Order allowing discovery relating to named plaintiffs Rand and LeWinter's involvement in other securities and class action suits comports with established law.

■ The burden is upon the party opposing discovery to show that discovery should not be permitted. *See Antonson,* 1990 WL 58028, at *2–*3 (plaintiff did not show that discovery of plaintiff's investment history was irrelevant).[6] Plaintiffs have not met this burden. The relevance of the named plaintiffs' investment history and their involvement in other securities and class action litigation is apparent. Accordingly, the March 25, 1992 Order of Magistrate Judge Katz is upheld.

II. *Motion to Withdraw as Class Representatives*

■ Plaintiffs Rand, LeWinter, and Levy seek to withdraw as class representatives through amendment of paragraph 2 of

---

**6.** This discovery was permitted as relevant even though the district court later certified the class, finding that the plaintiff's claim was not atypical.

*See Antonson v. Robertson,* 141 F.R.D. 501, 507–08 (D.Kan.1991).

the class certification order dated July 25, 1990. Rule 23(c)(1) of the Federal Rules of Civil Procedure permits a court to alter or amend the order of class certification prior to a decision on the merits. The district court, under Rule 23(c)(1), is charged with "monitoring its class decisions in light of the evidentiary development of the case." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *see Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C.Cir.1981). The court may modify the class, establish subclasses, or decertify as appropriate in response to factual development. *See Richardson*, 709 F.2d at 1019; *Bryan v. Amrep Corp.*, 429 F.Supp. 313, 317 (S.D.N.Y.1977). The court in its discretion may remove a named plaintiff as a class representative, should it be demonstrated that the named plaintiff does not meet the criteria of Rule 23(a). *See In re United States Financial Sec. Litig.*, 69 F.R.D. 24, 38 (S.D.Cal.1975).

The party proposing amendment of the class action order "should, at a minimum, show some newly discovered facts or law in support of their desired action." *Kramer v. Scientific Control Corp.*, 67 F.R.D. 98, 99 (E.D.Pa.1975), *appeal dism'd in part, rev'd in part*, 534 F.2d 1085 (3rd Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). The grounds offered for amendment must not be ones that have been given previously, or which could have been argued earlier but were not. *See id.* (denied defendants' motion to disqualify named plaintiffs); *see also In re International House of Pancakes Franchise Litig.*, 536 F.2d 261, 263 (8th Cir. 1976) (upheld denial of plaintiff's motion to be excluded from class action where plaintiff formed intention to opt-out within thirty-one days after time to opt-out expired, but did not move for exclusion until fifteen months later, and commenced individual lawsuit in meantime); *Sobel v. Yeshiva Univ.*, 85 F.R.D. 322, 325 (S.D.N.Y.1980) (denied plaintiffs' motion to redefine class made four-and-one-half years after the commencement of litigation, when no excuse given for failure to address at earlier time).

Plaintiffs have failed to show any factual or legal development which would compel the Court to amend the class certification order. Plaintiffs' argument that the remaining three named plaintiffs are adequate to represent the class is inapposite. Whether or not three named plaintiffs would have sufficed to represent the class at the outset has no bearing on whether the withdrawal of Rand, LeWinter, and Levy, over two years after class certification, will prejudice the defendants. On a motion to amend the class certification order, a district court must not only consider the criteria of Rule 23(a) and (b) in light of factual and legal developments, but also "whether the parties or the class would be unfairly prejudiced by a change in proceedings at that point." [7] Manual for Complex Litigation, Second, § 30.1.8, at 30–15 (Draft Feb. 1985).

Plaintiffs contend that the defendants will not be prejudiced by the amendment, but fail to demonstrate why this is so. Defendants, however, maintain that any such withdrawal will impair their defense, as their defense against the claims of the class must be accomplished through their defense against the claims of the named plaintiffs.

Further motions to amend the class certification order should await the completion of discovery. The Court will reconsider the class certification order at that time should the moving party demonstrate to the satisfaction of the Court that factual or legal developments warrant such amendment.

### CONCLUSION

Plaintiffs Rand and Lewinter's appeal from the Order of Magistrate Judge Katz is denied. Fed.R.Civ.P. 72(a). Plaintiffs' motion to amend the class action order to allow withdrawal of named plaintiffs Rand, LeWinter, and Levy is denied. Fed.R.Civ.P. 23(c)(1).

SO ORDERED.

---

**7.** Plaintiffs' citation from the Manual for Complex Litigation is inapposite. The passage cited by the plaintiffs pertains to the substitution of representative parties during the class certification phase. *See* Manual for Complex Litigation, Second, § 30.1.5, at 30–12 (Draft Feb.1985).