Joseph DEGULIS, Plaintiff,

v.

LXR BIOTECHNOLOGY, INC., Mark S. Germain, L. Scott Minick, Mark J. Tomei, James D. Coombes, David Blech, D. Blech & Company, Inc. and Shoenberg Hieber, Inc., Defendants.

George KOZLOSKI, Plaintiff,

v.

INTELLIGENT SURGICAL LASERS, Heinz R. Gisel, Ted G. White, Edward M. Lake, Robert J. Feeney, Jr., Anthony B. Envin, Robert J. Kunze, Ann H. Lamont, C. Christian Von Weizsacker, David Blech, and D. Blech & Co., Inc., Defendants.

John DEGULIS, Plaintiff,

v.

ARIAD PHARMACEUTICALS, INC., Harvey J. Berger, Edgar Haber, David Blech, D. Blech & Co., Inc. and Shoenberg Hieber, Inc., Defendants.

Bernard WEISS, et al., Plaintiffs,

v.

David BLECH, Texas Biotechnology Corporation, John M. Pietruski, David B. McWilliams, Richard A.F. Dixon, Stephen L. Mueller, John R. Plachetka, Joseph M. Welch, James T. Willerson, D. Blech & Co., Inc. and Issac Blech, Defendants.

Robert KATZ, on behalf of himself
and all others similarly
situated, Plaintiffs,

v.

David BLECH, LXR Biotechnology, Inc., Mark S. Germain, L. Scott Minick, Mark J. Tomei, James D. Coombes and Christopher S. Henney, Defendants.

Nos. 95 CIV. 4204 RWS, 95 CIV. 6422 RWS, 95 CIV. 4299 RWS, 95 CIV. 7215 RWS, 95 CIV. 4298 RWS.

United States District Court,
S.D. New York.

Nov. 20, 1997.

Kaplan, Kilsheimer & Fox, L.L.P. (Richard J. Kilsheimer, of counsel), New York City, Gilman & Pastor (David Pastor, of counsel), Boston, MA, Joseph Degulis.

Paul, Weiss, Rifkind, Wharton & Garrison (Max Gitter, Jay L. Himes, Marc O. Litt, of counsel), New York City, for Ariad Pharmaceuticals, Inc., Harvey J. Berger and Edgar Haber.

Thelen, Marrin, Johnson & Bridges (Paul A. Winick, of counsel), New York City, for LXR Biotechnology, Inc., Mark J. Tomei, James D. Coombes, L. Scott Minick and Christopher S. Henry.

### OPINION

SWEET, District Judge.

By letter motions defendants Ariad Pharmaceuticals, Inc., Harvey J. Berger, and Edgar Haber (collectively, "Ariad"), and LXR Biotechnology, Inc., L. Scott Minick, Mark J. Tomei, James D. Coombes and Christopher S. Henney (collectively "LXR" and together with Ariad, the "Defendants") seek certain brokerage and investment records of plaintiff Joseph Degulis ("Degulis") in this securities action in which class certification is sought. For the reasons set forth below, the motions are granted.

### The Parties

Degulis purchased securities of Ariad and LXR in their initial public offerings ("IPOs") on May 20, 1994 and May 6, 1994, respectively.

Ariad is a Delaware corporation having its principal place of business in Cambridge, Massachusetts.

LXR is a Delaware corporation having its principal place of business in Richmond, California.

Mr. Minick, Mr. Tomei, Mr. Coombes and Mr. Henney were officers and/or directors of LXR at the time of the LXR IPO, signed the 1994 LXR Registration Statement, and owned stock at the time of the LXR IPO.

Mr. Berger is Chairman, President and CEO of Ariad. Mr. Haber, an outside director, is Vice Chairman of the Ariad board. Both hold stock in Ariad and signed the 1994 Ariad Registration Statement.

### Prior Proceedings

These actions alleging securities and common law fraud, filed on June 8, 1995, are two of six actions arising out of the IPOs of various start-up biotechnology companies in which D. Blech & Co. ("Blech") was the underwriter and its principal, David Blech, was involved. The six actions are *In re Blech Securities Litigation*, 94 Civ. 7696(RWS), *Degulis v. Ariad Pharmaceuticals, Inc.*, 95 Civ. 4298(RWS); *Degulis v. LXR Biotechnology, Inc.*, 95 Civ. 4204(RWS); *Kozloski v. Intelligent Surgical Lasers*, 95 Civ. 4299(RWS); *Weiss v. Blech*, 95 Civ. 6422(RWS); and *Katz v. Blech*, 95 Civ. 6423(RWS). *In re Blech* is itself a consolida-

tion of four related actions: *Bronson v. Blech,* 94 Civ. 7959(RWS), *Garfinkel v. Blech,* 94 Civ. 7873(RWS), *Libauer v. Blech,* 94 Civ. 7696(RWS), and *Mays v. D. Blech & Co.,* 94 Civ. 7704(RWS). Discovery has been consolidated in these cases.

The factual and procedural background of these related cases is set forth in the prior opinions of this Court, familiarity with which is assumed. *See Weiss v. Blech,* No. 95 Civ. 6422, 1997 WL 458678 (S.D.N.Y. Aug. 11, 1997); *Degulis v. LXR Biotechnology, Inc.,* No. 95 Civ. 4202, 1997 WL 20832 (S.D.N.Y. Jan. 21, 1997); *Degulis v. LXR Biotechnology, Inc.,* 928 F.Supp. 1301 (S.D.N.Y.1996); *see also In re Blech Secs. Litig.,* 961 F.Supp. 569 (S.D.N.Y.1997); *In re Blech Secs. Litig.,* No. 94 Civ. 7696, 1997 WL 20833 (S.D.N.Y. Jan. 21, 1997); *In re Blech Secs. Litig.,* 928 F.Supp. 1279 (S.D.N.Y.1996).

This dispute arises out of Defendants' deposition notice and document request to Degulis served on April 22, 1997. Specifically, Degulis has refused to produce the documents identified in request numbers 16 and 17, which seek: "[a]ll documents concerning applications to establish brokerage accounts or other facilities for the purchase and sale of securities or commodities" and "[m]onthly account statements for any securities or commodities account maintained by, or on behalf of, Plaintiff during the period January 1, 1992 to present."

In response to this document request, Degulis has produced only those records relating to securities underwritten by Blech.

On August 15, 1997, Defendant's requested by letter motion to compel production of the documents. The motion was heard and considered submitted on September 10, 1997.

### *Discussion*

#### I. *Legal Standard For Discovery*

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, in part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The discovery rules are to be given a broad and liberal construction to effectuate their purpose of ensuring that civil trials are not conducted in the dark. *See Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 240–41, 13 L.Ed.2d 152 (1964); *see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). Moreover, the concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility, but rather is broad enough to afford parties liberal access to evidence in advance of trial. *See Quaker Chair Corp. v. Litton Business Sys., Inc.,* 71 F.R.D. 527, 530–31 (S.D.N.Y.1976). While the discovery rules are broad, they do not permit discovery of matters that are not relevant to issues in the case or calculated to lead to relevant and admissible evidence.

#### II. *The Requested Documents are Discoverable*

■ Defendants contend that the investment documents identified in the document request may shed light on Degulis' investment sophistication and strategy, and that this information is relevant to the issue of whether Degulis relied upon Defendants' alleged misrepresentations or omissions, when purchasing the stock in the IPOs.

The Ariad and LXR complaints allege violations of, *inter alia,* (1) Section 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, as amended, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (the "10b–5 claim"), and (2) common-law fraud and deceit. *See* Ariad Complaint, Counts III, IV; LXR Complaint, Counts III, IV. Moreover, the factual allegations specifically contend that Degulis "relied upon ... the statements disseminated by defendants during the Class Period" and that he purchased the securities

"[i]n reliance upon [ ] misrepresentations." *See* Ariad Complaint ¶¶ 62, 69.

To prove the common law fraud claim, Degulis must show that he relied on the Defendants' alleged misrepresentations or omissions. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19 (2d Cir.1996) (reliance an element of fraud under New York common law); *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995) (same). Therefore, evidence that may refute actual reliance is relevant to the merits of this case.

Generally, there are two possible theories to pursue a 10b–5 claim: (1) direct reliance, and (2) fraud on the market.[1] Degulis contends that he is pursuing a fraud on the market theory, which, he argues, does not require proof of reliance. Degulis' Complaints, however, also allege facts that give rise to a direct reliance theory. Since the direct reliance theory alone supports the discovery requested, the Court need not address whether such discovery is permitted where no direct reliance is alleged.

The Court's holding in *In re The AES Corp. Secs. Litig.*, 849 F.Supp. 907, 910 (S.D.N.Y.1994) that "[w]hen direct reliance is alleged in the Complaint, plaintiffs' sophistication is relevant to the merits of these allegations and a defense of non-reliance" is directly on point. The plaintiffs in *AES* claimed 10b–5 and common law fraud violations. Furthermore, plaintiffs advanced both direct reliance and fraud on the market theories. The *AES* court held that "when direct reliance is alleged ... plaintiffs' sophistica-

tion is relevant to the merits of these allegations and a defense of non-reliance." Indeed, in *AES*, the court directed plaintiffs to produce the very categories of documents withheld here, including brokerage statements reflecting any security owned, held or sold by or for the account of any plaintiff during a four-year period. *Id. See also In re Harcourt Brace Jovanovich, Inc. Secs. Litig.*, 838 F.Supp. 109, 111, 114 (S.D.N.Y.1993) (plaintiffs ordered to produce brokerage statements showing trading in public securities because "discovery relating to investment history is proper where direct reliance is alleged").

Here, discovery to date has established that Degulis has invested relatively small amounts in four offerings underwritten by Blech. However, Degulis has a seven figure net worth and a six figure annual income. Accordingly, the Degulis's sophistication as an investor, and the possible impact this would have on his reliance on supposed misrepresentations or omissions by the Defendants, is a properly discoverable subject.

Degulis' reference to the Court's decision in a related action, *Weiss v. Blech*, is misplaced. *See Weiss v. Blech*, No. 95 Civ. 6422, 1997 WL 458678 (S.D.N.Y. Aug. 11, 1997). As indicated in that opinion, the plaintiff alleged only violations of Sections 11 and 12(2) of the Securities Act of 1933, 48 Stat. 84, as amended, 15 U.S.C. §§ 77k, 77l(2). The plaintiff there did not allege, as Degulis did here, claims under Section 10b–5 or common law fraud. As the Court noted, "inasmuch as reliance is not an element of a Section 11 or Section 12(2) claim, ... a plain-

---

1. It is not clear, and the Court need not decide at this time, whether Degulis' theory of fraud on the market applies in this case. The theoretical underpinnings of the fraud on the market presumption of reliance, outlined in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), presupposes the existence of a well-developed market, which reflects all publicly traded information. Although the parties have cited no controlling precedent in this Circuit, some courts have held that the presumption may not apply in cases involving IPO's—such as this one—because in the IPO setting, there is no well-developed, efficient trading market. *See, e.g., Freeman v. Laventhol & Horwath*, 915 F.2d 193, 198 (6th Cir.1990) (rejecting investors' reliance on a fraud on the market presumption because a primary market for newly issued municipal bonds as a matter of law is not efficient); *Gruber v. Price Waterhouse*, 776 F.Supp. 1044, 1052 (E.D.Pa. 1991) (refusing to apply fraud on the market presumption of reliance because "[i]n an initial public offering it cannot be assumed price reflects value because there is simply no open and developed market"); *see also Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1263 (S.D.N.Y.1984) (declining to apply fraud on the market doctrine and holding that it "will presume reliance only when it is logical to do so").

tiff's 'sophistication' regarding securities and investment practices is irrelevant." *Id.* at *3. Unlike the Complaint in *Weiss*, here Degulis' section 10b–5 claim and common law fraud claims do depend on proof of reliance and therefore the additional discovery is justified.

■ In addition to its relevance to the merits, Degulis' sophistication and trading strategies is relevant to the pending class certification motion. The determination of whether a class representative is "typical" might be affected by any unique defenses relating to an investment strategy. *Weintraub v. Texasgulf, Inc.*, 564 F.Supp. 1466, 1471 (S.D.N.Y.1983) (class certification denied where proposed class representative was sophisticated, speculative trader whose peculiar trading activities would give rise to unique defense "that may have the ultimate effect of prejudicing members of the proposed class"); *Kline v. Wolf*, 88 F.R.D. 696, 699–700 (S.D.N.Y.1981), *aff'd*, 702 F.2d 400 (2d Cir.1983) (class certification denied where proposed representative was a speculative trader who did not rely on the market subjecting him to " 'unique defenses' on the issue of reliance inapplicable to other purported class members which vitiates the typicality of his claims"). Here, the issue of whether Degulis satisfies the typicality requirement justifies the discovery requested.

Accordingly, Defendants' request for documents concerning Degulis' applications to establish brokerage accounts or other facilities for the purchase and sale of. securities or commodities and for monthly statements for any such accounts or facilities is relevant and appears reasonably calculated to lead to the discovery of admissible evidence, and therefore the documents are discoverable.

### Conclusion

The Defendants' motion is granted, and the requested documents will be produced.

It is so ordered.